J. L. Simmons Company, a Corporation, Plaintiff-Appellant, v. Lumbermens Mutual Insurance Company, a Corporation, Defendant-Appellee.

Gen. No. 51,223.

First District, Second Division.

May 23, 1967.

Ruff and Grotefeld and Campbell, Clithero, Fischer & Guy, of Chicago (John E. Guy and David H. Pauker, of counsel), for appellant.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Abe R. Peterson, Harold W. Huff and Herbert C. Loth, Jr., of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This is an appeal from the entry of a judgment in a bench trial against the plaintiff-appellant, J. L. Simmons Company, at the close of its case. Subsequent to the entry of such judgment, plaintiff made a motion to vacate the judgment, or in the alternative, to grant a new trial, which motion was denied and from which this appeal is taken.

Plaintiff's cause was founded exclusively upon the terms of a contract of liability insurance it held as the insured with the defendant-appellee, Lumbermens Mutual Insurance Company. The effective dates of the policy in question were July 1, 1955, to July 1, 1956. Plaintiff is a construction company and was in the month of October, 1955, engaged in the excavation of certain land owned by the Illinois Farm Supply Company (hereinafter referred to as Illinois Farm) in Springfield, Illinois. On October 5th and 6th, 1955, an unseasonably large quantity of rain fell in the Springfield area. Due to the rain, unanticipated underground hydrostatic pressures developed which began to buckle the existing shoring in the excavation. The walls of the excavation threatened to collapse and thereby place a warehouse structure on the immediately adjoining property in imminent peril. The adjoining property and structure were also owned by Illinois Farm.

During the course of the rainfall, plaintiff's insurance manager, Mr. Fusch, telephoned defendant's salesman, Mr. O'Rear, to inform him of the emergency situation. Defendant's agent, upon learning of the impending collapse, told Fusch to keep him advised, but otherwise took no affirmative action. Thereafter, plaintiff proceeded to secure and install emergency bracing against the pilings which had theretofore been in place. The preventative reinforcing measure successfully provided the lateral support needed to withstand the increased pressure. The adjacent subsoil beneath the warehouse did not collapse,

although some settling and cracking damage to that structure did result.

Plaintiff maintains that it incurred, at cost and without a profit, approximately $13,000 in expenses to secure and erect the additional bracing, as well as $5,000 in expenses to repair the damage to the warehouse. Defendant argues that the evidence offered failed to sustain plaintiff's allegation of expenditures. Plaintiff concedes, that while the exact amount of damage is disputed, some damage has nonetheless been established by the evidence. Illinois Farm has never instituted a claim against plaintiff relative to this occurrence. Written notice of plaintiff's claim for reimbursement was not sent to defendant until October 3, 1956, almost a year after the events which gave rise to this cause of action.

Plaintiff contends defendant was and is obligated to reimburse it for such sums so expended pursuant to the terms of their contract of insurance. Plaintiff attached a copy of the contract to its complaint. Defendant admits the existence of the policy but denies liability on the basis of the contract's express language.

It is plaintiff's sole theory of the case that as an excavator it owed an absolute duty to the adjoining property owner not to remove its property's lateral and subjacent support. This absolute duty having been shown to exist, plaintiff maintains that the monies expended by it represented a sum which it was legally obligated to pay as damages within the meaning of the contract of insurance.

It is defendant's theory of the case (1) that plaintiff has failed to show that it became legally obligated to pay damages within the meaning of the policy's coverage, (2) that plaintiff has failed to comply with conditions 8 and 11 of said policy, and (3) that plaintiff's claim is excluded as a basis of liability by Endorsement K of the policy.

The insurance contract was amended by at least eighteen subsequent endorsements which each recite the same effective dates as that of the parent policy. While numer-

ous provisions of both the parent policy and its subsequent endorsements have been called into question, we are of the opinion that only the following clauses are applicable to the disposition of this appeal, to wit:

Coverage B—Property Damage Liability
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

Condition 8—Notice of Accident
When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable.

Condition 11—Action Against Company
No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company.

Endorsement K—Exclusion of Property Damage Liability
. . . such insurance as is afforded by the policy for property damage liability . . . does not apply to . . . (2) the collapse of or structural injury to any building or structure due (a) to excavation, . . .

Endorsement 11—Property Damage Liability
In consideration of an additional premium to be computed as herein provided, it is agreed that Comprehensive Endorsement K and Comprehensive Endorsement N do not apply, . . .

After the close of plaintiff's case, defendant made a motion for judgment in its favor as a matter of law. The trial judge, in granting such motion, stated:

> . . . assuming that all of the conditions and proper notice was given under the endorsement, . . . what are the obligations of the parties?

> . . . in my opinion, the obligation of the defendant is as I read it under Coverage B of the Insuring Agreement, and that being the obligation of the defendant, it is my opinion in this case that the plaintiff has not and is not in a position that he can say that he became legally obligated to pay these damages, and, therefore, it is my opinion that he cannot recover under this policy.

Relative to the issues of (1) amount of damages, (2) the timeliness of plaintiff's notice to defendant, and (3) the applicability or inapplicability of Endorsement K's exclusion of damage resulting from excavation in light of Endorsement 11, this court renders no opinion. Notwithstanding such issues, we concur with the trial judge in that the plaintiff failed in its case to establish that it expended sums which, under the law, it was obligated to pay within the language and intent of Coverage B of the policy.

■ ■ Plaintiff voices strenuous objection to the trial judge's determination of its cause as a matter of law. Plaintiff points out, and we agree, that since defendant's motion challenged the legal sufficiency of the action, the evidence thus far presented together with all its reasonable intendments should be construed in a light most favorable to plaintiff. Should there be any evidence, which standing alone supports the claim, the judgment must be reversed.

Plaintiff relies on three cases as authority for its theory that an excavator is under an absolute duty to

adjoining landowners. These cases are City of Quincy v. Jones, 76 Ill 231 (1875), Schroeder v. City of Joliet, 189 Ill 48, 59 NE 550 (1901) and People ex rel. Hepburn v. Maddox, 340 Ill App 34, 91 NE2d 107 (1950).

The Quincy case establishes no such absolute duty of care. To the contrary, the case promulgates simply a duty of reasonable care taking into consideration all of the attendant circumstances. The duty was aptly considered a question of fact for a jury. Absent a violation of such a duty, the court said there could be no recovery. The Quincy decision goes even farther in qualifying this duty of care. The court there held that an adjoining landowner's right to lateral support extends only to his soil as it exists in its natural state, and not to the support needed as a consequence of the additional weight of a building erected thereon.

In the case of Exchange Nat. Bank of Chicago v. Code, 23 Ill App2d 382, 163 NE2d 554 (1959), this court adopted and followed the position taken in Quincy thereby refuting any arguments for the establishment of an absolute duty of care. We said:

> The excavating owner owes no duty to the adjoining owner to shore up his property, but only owes the duty of using due care in the performance of the excavating.

While the distinction may be made that in the instant case plaintiff was an excavating contractor rather than an excavating owner, plaintiff has cited no case, nor are we aware of one which relied on this distinction for the imposition of a common-law absolute duty of care.

In this conjunction, plaintiff has relied on a statement in the Quincy case at pages 241 and 242 relative to the imposition of such an absolute duty where the two adjoining parcels are held by a common owner who has acquired ownership rights either by grant or prescription. The court there said:

. . . the defendant is charged with the duty of supporting, not merely the soil, but the house of plaintiff's parcel. . . . the owner is said to be entitled to full protection against the consequence of any new excavation.

Plaintiff's point is not well taken as the latter, upon which it relies, was not determinative of the issues in the Quincy case. The complaining landowner in that case was held not to be the common owner of the parcels either by grant or prescription.

The Schroeder case is equally unpersuasive. There the defendant never denied, and thus put in issue, that it had removed the plaintiff's land's lateral support to her resulting damage. The only question before that court for determination was the measure of plaintiff's damages.

Likewise, the Hepburn case is not in point. Liability there was not predicated upon an absolute duty of care. The court based its determination of liability upon two findings; to wit, (1) that the defendant drainage commissioners knowingly furnished to the excavator (an independent contractor) defective plans and specifications that caused the injury complained of, and (2) that the collapse of the bridge involved was not caused by erosion and gullying as the defendants contended, but rather by defendants' deliberate lowering of the adjacent stream bed.

██ We cannot accept plaintiff's contention that it was bound to an absolute duty of care. To sustain such a proposition would require this court to say that the defenses of Act of God and/or exercise of reasonable care would be unavailing to plaintiff had it been sued by Illinois Farm. Such, of course, would be an erroneous interpretation of the applicable law.

Coverage B of the parent policy expressly limits defendant's property damage liability to "sums which the insured shall become legally obligated to pay as dam-

ages." Accordingly, plaintiff maintains that the costs of mitigating damages, which flow from a violation of a legal obligation, are themselves a measure of damages. Such a contention, of course, is not well taken if, in the first instance, such a legal obligation to pay has not been established by the evidence. Moreover, this court cannot probe into the merits of any would-be claim brought by Illinois Farm against plaintiff to determine the obligation as the question of their rights inter se is not properly before us.

Condition 11 of the parent policy, when read, not as a condition precedent to liability, but rather as it lends import and meaning to the language of Coverage B, can lead to but one inescapable interpretation of such coverage. Condition 11, in unequivocal language, conditions the insurer's liability upon the insured's obligation to pay having first been (1) finally determined by a judgment against the insured, or (2) consented to in writing by the insured, the claimant, and the company. Suffice to say, the claimant, Illinois Farm, has never brought an action against plaintiff relative to the occurrence, nor has plaintiff attempted to procure the written consent of the parties involved so as to establish some obligation with finality.

 This is not to say that the court ignores the exigent circumstances involved or the obvious good faith efforts of the plaintiff. We, however, are not empowered, in the guise of good faith and peculiar circumstances, to alter the terms of an otherwise unambiguous contract. The intention of the parties is the gravamen under ordinary contract principles. Absent an ambiguity, this intention can only be determined from the language of the agreement itself, and not from extrinsic circumstances. Allstate Ins. Co. v. Conglis, 33 Ill App2d 370, 179 NE2d 434 (1961); Pohlman v. Universal Mut. Cas. Co., 12 Ill App2d 153, 138 NE2d 848 (1956). The general rule is

that the ambiguous portions of an insurance contract are to be construed most strongly against the insurer. That rule, however, cannot operate to authorize a perversion of the language and intention of the contracting parties for the purpose of creating an ambiguity where none exists. Yadro v. United States Fidelity & Guaranty Co., 4 Ill App2d 477, 124 NE2d 370 (1955).

In so ruling, we do not think we are casting upon plaintiff an unreasonable burden. Plaintiff was not without a feasible alternative when faced with the impending collapse. Plaintiff could have procured the written consent of Illinois Farm and defendant before incurring the expenses alleged. It never chose to do so. The fact that defendant's agent, Mr. O'Rear, took no affirmative action when informed of the situation is of no consequence. The contract did not place the burden upon the insurer to finalize a determination of the alleged obligation of the insured. Oda v. Highway Ins. Co., 44 Ill App2d 235, 194 NE2d 489 (1963).

Nowhere in the insuring agreement is plaintiff empowered to make an ex parte determination of its obligation to pay. Accordingly, plaintiff acted as a mere volunteer and is thus not entitled to the cost of mitigating a damage, which damage it may not have been legally obligated to pay initially.

Plaintiff's case of Leebov v. United States Fidelity & Guaranty Co., 401 Pa 477, 165 A2d 82 (1960), does not dictate a contrary conclusion. There the insured was awarded expenses incurred as a consequence of his attempt to arrest a threatened landslide. The insurance contract involved contained quite similar language to that found in Coverage B of the instant policy. Of pivotal significance, however, is that unlike the case at bar, the injured property owner had theretofore obtained a judgment against the insured for the amount of the damage to his land. It was only from within this perspective that

the insured was reimbursed his costs in attempting to mitigate further damage. In Leebov, the insured had truly become "legally obligated to pay" within the meaning of the insurance contract. Plaintiff's alleged obligation in the instant case has not been subjected to any such judicial determination.

■ Plaintiff next contends the judgment for defendant at the close of its case prematurely and erroneously considered certain affirmative defenses of defendant. We do not agree. All other proofs notwithstanding, plaintiff failed to establish prima facie its legal obligation to pay within the meaning of the contract which formed the sole basis of its action. A copy of the contract was attached to plaintiff's complaint, and was ofttimes alluded to on both direct and cross-examination during the course of its presentation. As such, the trial judge did not err in considering the language of Coverage B when passing upon defendant's motion for judgment. There being no evidence to support plaintiff's claim, we must sustain the lower court's finding.

For the above reasons, the judgment is affirmed.

Affirmed.

BURKE and BRYANT, JJ., concur.