AMERICAN NATIONAL BANK OF CHAMPAIGN, Plaintiff-Appellant, *v.* HENRY A. WARNER, Defendant-Appellee (Frank C. Pesek, Defendant).

Fourth District   No. 4—83—0673

Opinion filed August 21, 1984.

Robert J. Beyers, of Law Offices of Dodd & Beyers, of Champaign, for appellant.

William M. Goldstein, of Urbana, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

The plaintiff, American National Bank of Champaign (Bank), appeals from a judgment holding that the defendant, Henry Warner, is not liable for the unpaid amount of a debt as to which he and Frank Pesek are co-obligors. The court held that (1) Warner is not a guarantor of any of the notes which evidence the debt; (2) the Bank's continually asking Warner to sign renewal notes in effect estopped the Bank from asserting that language in preceding notes which Warner signed, consenting to all renewals and extensions thereof, was binding on Warner; and (3) that Warner did not agree to be bound by notes which Pesek alone signed at times subsequent to the joint execution of notes by Warner and Pesek. Although we agree that Warner is not a guarantor of any of the notes, we hold that language contained in the notes which both Warner and Pesek signed, by which they consented to all further renewals or extensions thereof, rendered Warner liable as to the amount remaining due on the debt evidenced by renewal notes which only Pesek signed, and that the Bank has not released Warner's obligation to pay this amount.

In view of our decision, an extensive review of all the evidence presented at trial is unnecessary. On January 22, 1979, Warner and Pesek executed a $15,000, six-month, promissory note to American National Bank, bearing 12¾% interest per annum. Among the terms of the note was a provision that "[e]ach of the undersigned consents to any and all renewals or extensions of this Note." The note was secured by Warner Management Consultants stock, and the principal purpose of the transaction was to enable Pesek to purchase stock in that firm. Prior to the sale of the stock to Pesek, Henry Warner owned approximately 90% of Warner Management's outstanding shares.

On July 26, 1979, the same parties signed a renewal of the above note in the amount of $14,000 on the same terms as previously. On February 4, 1980, a further renewal note was executed by Pesek and Warner in the amount of $13,107.78. This note contained the same terms as the prior notes, except that the interest rate was 15½% per annum.

On November 26, 1980, Pesek alone signed an additional renewal note in the amount of $12,107.78. Except for an interest rate of 18¾% and some other relatively minor variations not relevant to the issues which this case presents, this note also contained terms similar to the prior notes. Despite his refusal to sign the renewal note just

mentioned, Warner signed a purported guaranty of all of Pesek's liabilities to the Bank "howsoever evidenced, whether now existing or hereafter created or arising" on December 12, 1980. This purported guaranty consisted of a printed form, and its language was circumscribed by the following hand-printed language appearing on the form: "This is limited to the original amount of $15,000 and will not exceed that amount which is currently being reduced."

Following execution of the November 26, 1980, renewal note, there were apparently some renewals of that note which were evidenced by the Bank's simply stamping a renewal form on the reverse thereof. During late 1980 and 1981, Pesek continued to repay the loan and by August 26, 1981, the principal had been reduced to $9,600. Subsequently, however, Pesek's rate of repayment slackened and by March 23, 1982, the principal had increased to $10,700 as a result of the addition of accrued interest to the principal amount of the loan. On that date, Pesek alone executed another renewal note in the amount of $10,700, bearing interest at a floating rate of 1% over prime and payable in monthly installments of $314.32. Following Pesek's failure to make regular payments on the last mentioned note and Warner's failure to make the note good, the Bank filed suit against both Pesek and Warner. Pesek subsequently consented to the entry of a judgment against him in the amount of $11,946.62. He is not a party to this appeal. Following a bench trial, the court held that Warner is not liable for the amount of the $15,000 debt remaining due to the Bank. From this judgment the Bank appeals.

■ As a basis for affirming the trial court's judgment, Warner asserts that the Bank intended to release him from all liability on the notes which he signed when it accepted the November 26, 1980, renewal note or when it accepted his guaranty, and that the guaranty is unsupported by consideration. At the outset, we note that Warner does not contend that he is anything other than a principal maker (as opposed to an accommodation maker) of the notes that he signed. These notes explicitly provide that the makers consent "to any and all renewals or extensions" thereof. In the absence of ambiguous contractual language, the intention of contracting parties as to the import of their contract must be ascertained solely from the contractual language itself. (*J.L. Simmons Co. v. Lumbermens Mutual Insurance Co.* (1967), 84 Ill. App. 2d 98, 228 N.E.2d 227.) The contractual language at issue binds the principal signers of the notes to all renewals and extensions of the notes in the clearest and most explicit terms. We must therefore give effect to the nonambiguous contractual language which the parties adopted and hold that Warner is, on the basis

of the language pertaining to renewals and extensions in the notes that he and Pesek signed, liable for the amount of the original $15,000 debt remaining unpaid (see *Lee v. Pioneer State Bank* (1981), 97 Ill. App. 3d 97, 423 N.E.2d 218; *Jacobson v. Devon Bank* (1976), 39 Ill. App. 3d 1053, 351 N.E.2d 254), unless the Bank at some point released Warner from his liability for this debt.

In order to be accorded legal effect, a release of an obligation must be premised upon adequate consideration. (*Toffenetti v. Mellor* (1926), 323 Ill. 143, 153 N.E. 744.) A search of the record before us reveals that Warner provided the Bank with no consideration which would have supported a release of his liability on the basis of the notes either prior to or at the time of the Bank's acceptance of the November 26, 1980, renewal note. Thus, the Bank's subjective intent in accepting the renewal note of November 26, 1980, is irrelevant, since on the basis of the evidence there could not have been a release of Warner's obligation prior to or at the time of the Bank's acceptance of that note.

This brings us to the interrelated questions of whether Warner's purported guaranty was supported by adequate consideration and whether the Bank's acceptance of this alleged guaranty constituted a release of Warner's liability on the notes. It is elemental that a guaranty agreement is of no legal effect unless supported by adequate consideration. (*Blakely Printing Co. v. Barnard* (1896), 63 Ill. App. 238.) Where a guaranty is executed contemporaneously with the note or obligation guaranteed, the consideration for the note or obligation furnishes consideration for the guaranty, but where the guaranty is executed after the guaranteed debt is incurred, new consideration is necessary to support the guaranty. (*First National Bank v. Chapman* (1977), 51 Ill. App. 3d 738, 366 N.E.2d 937.) An agreement to perform one's preexisting contractual obligations does not constitute legally sufficient consideration for a guaranty agreement. *Vanderbilt v. Schreyer* (1883), 91 N.Y. 392.

What consideration flowed between the parties to the alleged guaranty at issue here? The short answer is none. Warner had previously consented to an unlimited number of extensions or renewals of the notes which he signed and was thus liable for the principal amount of those notes remaining unpaid, plus accrued interest, at the time that he signed the guaranty. His guaranty was limited to the amount of the original debt evidenced by those notes remaining unpaid. Thus, in signing the guaranty, Warner agreed to do nothing more than make good on an existing legal obligation. Likewise, there is no indication that the Bank, in accepting the guaranty, agreed to

forbear collection of the debt for a period longer than the six months for which it was obligated to forbear by the terms of the November 26, 1980, note or that it provided Pesek or Warner with any other consideration for the guaranty. Thus in executing and accepting the guaranty, Warner and the Bank, respectively, agreed to do nothing more than that which they were already obligated to do. It follows that the alleged guaranty was unsupported by adequate consideration, that it was in reality a *nudum pactum*, and that it could not have constituted adequate consideration for the alleged release of Warner's liability on the notes. See *Northern Crown Bank v. Elford* (1916), 9 Sask. 306, 30 D.L.R. 562 (execution and delivery of guaranty which is invalid for want of consideration is not adequate consideration for cancellation of previously existing guaranty).

█ Moreover, even if we were to assume that Warner's alleged guaranty was supported by adequate consideration, we would nevertheless be compelled to hold that the execution of this guaranty did not constitute adequate consideration for the Bank's purported release of Warner's obligation on the notes. An agreement to do that which one is already under an existing legal obligation to do does not constitute adequate consideration for the release of an obligation (*Beyer v. Wolfe* (1923), 228 Ill. App. 429; see *Salvaggio v. Schofroth* (1971), 133 Ill. App. 2d 811, 272 N.E.2d 53 (abstract of opinion)), and by virtue of the guaranty, Warner agreed to do no more than to pay the amount of the original debt remaining due if Pesek failed to do so, which is exactly what he had a preexisting legal obligation to do.

█ In summary, we hold that the language in the three notes which Warner signed, consenting to all renewals or extensions thereof, rendered Warner liable for the amount of the original $15,000 debt remaining unpaid on the basis of the renewal notes signed by Pesek alone; that Warner's purported guaranty was unsupported by adequate consideration, and that even if this guaranty were supported by adequate consideration, it nevertheless could not have constituted legally adequate consideration for the Bank's purported release of Warner's obligation on the notes; that there was no other adequate consideration for the Bank's purported release of Warner's liability on the notes, and that Warner is thus liable for the amount of the original $15,000 debt remaining unpaid, plus accrued interest. The cases which Warner cites in support of his argument that we should affirm the trial court's decision do not require a contrary result. None of these cases deal with contractual language consenting to automatic extensions or renewals of notes, and none involved the situation where the only consideration supporting a purported release of an ob-

ligation was an agreement to perform one's preexisting legal duties. The principal case upon which the trial court relied in support of its decision, *Holcomb State Bank v. Adamson* (1982), 107 Ill. App. 3d 908, 438 N.E.2d 635, is likewise inapposite, since the defendant in that case was an accommodation maker as opposed to a principal, and the gravamen of the court's decision was that the defendant was not liable on the note that he signed because the words of guaranty did not appear in close proximity to his signature. No such issue is present in the case at bar.

■ Since the trial court erred in entering judgment for Warner, we must reverse the judgment below. Warner maintains that if we reverse, we should remand, "for further proceedings on the issue of the March 23, 1982, note [the final renewal note which Pesek signed] and the effect of same on Mr. Warner's guaranty." The only material respects in which the latter note differs from the previous notes is that it is unsecured by Warner Management stock, its principal amount includes $1,100 accrued interest, and it is payable in monthly installments of a fixed amount. Neither party contends that this note is not premised on the amount of the original $15,000 debt remaining unpaid at the date of its execution, and Warner does not state in what manner he considers the differences between this note and the prior notes to be relevant to the issue of his liability for the amount of the debt represented by the note. In our view, the only one of these differences which is of any importance is the inclusion of previously accrued interest in the principal amount of the March 23, 1982, note. None of the notes which Warner signed provide for compound interest or interest on accrued interest, and the Bank therefore should not have included accrued interest in the principal amount of this note.

We therefore reverse the circuit court's judgment and remand this cause with directions that the circuit court enter judgment in favor of plaintiff American National Bank of Champaign and against defendant Henry Warner in the amount of $9,600, plus accrued simple interest, and that the court hold an evidentiary hearing in order to ascertain the amount of simple interest due.

Reversed and remanded with directions.

MILLS, P.J., and MILLER, J., concur.