[No. 8180-0-III. Division Three. March 17, 1988.]

MARLEY ORCHARD CORPORATION, ET AL, *Respondents,* v.
THE TRAVELERS INDEMNITY COMPANY, *Appellant.*

IRRIGATION SPECIALISTS, INC., *Respondent,* v.
THE TRAVELERS INDEMNITY COMPANY,
*Appellant.*

*Lee Corkrum, Phillip C. Raymond,* and *Ogden, Ogden, Murphy & Wallace,* for appellant.

*Walter G. Meyer, Jr., Meyer & Fluegge,* and *Thomas Allen Prediletto,* for respondents.

McINTURFF, C.J.—Travelers Indemnity appeals a summary judgment declaring that a comprehensive general liability policy it had issued to Irrigation Specialists, Inc. (ISI), covered damages suffered by Marley Orchard Corporation as a result of ISI's defectively designed irrigation system. We agree with the superior court's holding that Marley's damages were covered "property damage" as that term is defined in the policy and that policy provisions excluding coverage for damage to the insured's product or work do not apply.

Marley owns Black Rock Ranch, a model orchard developed from the ground up with the object of producing high quality apples. In the spring of 1979, Marley contracted with ISI for the design and installation of an automated irrigation system at Black Rock Ranch. The piping for the system was installed in the summer of 1979, at the same time the orchard's young trees were planted.

ISI told Marley the irrigation system would give adequate coverage and would be satisfactory for adequate irrigation purposes. However, as the young trees grew in size, the distribution of water became nonuniform. That is, the trees immediately adjacent to the sprinkler heads deflected the sprinklers' spray, with the result that the trees behind received inadequate coverage and penetration. During late July and early August of 1983, these trees exhibited stress. Marley hired independent consultants to evaluate the orchard's irrigation problems and to suggest methods by which the design could be altered to provide adequate coverage. Based on their recommendations, Marley doubled the number of branch lines and sprinkler heads at a cost of $124,518.78.

Litigation between Marley and ISI ensued. ISI's insurer, Travelers Indemnity, defended ISI in the action under a reservation of rights, stating:

The policy is intended to cover resultant damage which flows from a defective product of the named Insured and were it found that there was damage consisting of crop loss caused by negligent installation of the sprinkler system, there would be coverage for the crop loss.

Following trial in 1984, the court found ISI was negligent, that it had breached its contract with Marley, and that it had breached its express and implied warranties. It specifically found Marley's additions to the system were "in mitigation of losses in production and stresses in the trees in the orchard", and it awarded Marley damages of $139,885.10 covering its costs in efforts to establish uniform coverage, hiring consultants, and alterations. However, the court also found Marley "failed to establish, by a preponderance of the evidence, that it sustained the other losses claimed, including the claim for loss of production for the subject orchard through crop year 1986."

In its oral opinion, the court reasoned:

I believe the credible testimony is as these trees get older, deflection is going to become so substantial . . . that it would have necessitated the changing of the system to reduce . . . it so they would not have future problems with quality and stress on these trees.

. . . All Marleys did was mitigate their damages as required by law . . .

. . .

. . . Some stress has occurred to the trees and had the system not been changed, it probably would have manifested itself later, . . .

Travelers subsequently denied coverage, and in May 1986 Marley brought an action for declaratory relief and damages against Travelers.[1] Travelers answered, alleging that the damages here do not constitute "property damage"

---

[1]ISI also brought an action for declaratory relief which was consolidated with Marley's action. Counsel in oral argument represented that Marley brought its action pursuant to an assignment of rights from ISI, which is bankrupt.

within the meaning of the liability policy which Travelers had issued to ISI and that the products hazard exclusion and the completed operations exclusion of the policy applied.

The pertinent ISI policy provisions are:

A. Insuring Agreements.

 1. Bodily injury–Coverage A; Property Damage–Coverage B—The Travelers will pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed by law upon the Insured, or assumed by the Insured under any oral or written contract or agreement, as damages because of: (a) bodily injury; or (b) property damage; to which this insurance applies, caused by an occurrence.

. . .

B. Exclusions.

 1. Coverages A and B do not apply:

. . .

 (l) with respect to the products hazard, or to liability assumed by the Insured under any contract or agreement, to property damage to the Named Insured's products arising out of such products or any part of such products;

 (m) with respect to the completed operations hazard, or to liability assumed by the Insured under any contract or agreement, to property damage to work performed by the Named Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith;

. . .

E. Definitions.

. . .

 16. "Property damage" means: (a) physical injury to or destruction of tangible property which occurs during the policy period, . . .

The parties made counter motions for summary judgment. The court declared the policy covered the damages in question and granted summary judgment to Marley. Its memorandum opinion states:

Finding No. V[2] [of the 1984 judgment in the case of *Marley v. ISI*] establishes that the irrigation coverage was adversely affecting the growth of the trees, that certain trees exhibited stress, and that this would become an increasing problem as the orchard matures. These Findings clearly establish a progressively damaging condition to the orchard cured only by [Marley's] actions in avoiding the consequences of the improperly designed and installed irrigation system.

The two exclusions referred to excluded coverage for property damage to the insured's product or property damage to work performed by the insured. *There is no claim by [Marley] nor evidence in the record that the product or work performed by [ISI] was damaged [as defined in the policy as physical injury to tangible property]. The judgment entered was for the installation of additional lines, risers and related expenses.*

(Italics ours.)

According to Travelers, Marley attempted to prove two types of damages in its 1984 action against ISI: (1) injury to the orchard itself, *i.e.*, loss of production and stress to the trees; and (2) damage incurred by Marley in completing the irrigation system. While Travelers admits the court found the orchard's trees were stressed, it argues that the court awarded Marley no compensation for this fact. In Travelers' view, the damages awarded were not for injury to the orchard, but solely for completion of the system.

Travelers' analysis is not persuasive because it is based on an artificial bifurcation of Marley's damages. We have reviewed the findings and conclusions entered in the 1984 action and we agree with the superior court that Marley

---

[2]In Marley's action against ISI, the court entered finding of fact 5:

"It was not until crop year 1983 that plaintiffs actually realized, or in the exercise of reasonable care should have realized, that the coverage was adversely affecting the growth of the trees. This became apparent during late July and early August of 1983 when certain trees exhibited stress. These trees exhibited stress due to improper irrigation coverage and were those trees which were between the trees immediately adjacent to the sprinklers. The inadequacy of coverage was a result of the deflection of water by the trees immediately adjacent to the sprinklers and said deflection will become an increasing problem as the orchard matures and the trees continue to grow."

proved ISI's system was inadequate and had resulted in stress to the orchard's trees. The court awarded Marley compensation for the cost of completing ISI's irrigation system because that cost flowed from the damage Marley had proved its trees suffered. The question then is whether these damages are covered by Travelers' policy.

## A
### PROPERTY DAMAGE

 The policy covers liability for property damage, which is defined as physical damage to tangible property. The court in the 1984 action found "the coverage was adversely affecting the growth of the trees. This became apparent during late July and early August of 1983 when certain trees exhibited stress." This finding supports the superior court's holding here that Marley had suffered property damage as defined by the policy.[3]

Travelers' reliance on *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 608 P.2d 254 (1980) and *General Ins. Co. v. International Sales Corp.*, 18 Wn. App. 180, 566 P.2d 966 (1977), *review denied*, 90 Wn.2d 1010 (1978) is misplaced. Those cases are distinguishable because they did not involve property damage *separate* from the damage to the insured's product. Here, the property damage is the stress to the trees.

Nor are we persuaded by Travelers' argument that Marley did not prove property damage under the policy because the superior court in the 1984 action found Marley had not established its claim for loss of production. Such argument ignores the stress to the trees caused by the inadequate system, a fact also found by the superior court.

The policy states Travelers will pay "all sums which the Insured shall become obligated to pay *by reason of the liability imposed by law* upon the Insured . . . as damages

---

[3]Since we conclude the property damage was the stress to the trees, we do not address Marley's argument that the mere presence of the defective irrigation system in the orchard constituted property damage.

because of . . . property damage". (Italics ours.) The court found that Marley was "required" to make additions to the irrigation system and that the additions were "in mitigation of losses in production and stresses in the trees". Are these costs a "liability imposed by law" upon ISI "as damages because of . . . property damage"?

■ The quoted policy language covers consequential damages, *i.e.,* damages causally related to the property damage. *Yakima Cement,* at 219; *Federated Mut. Ins. Co. v. Concrete Units, Inc.,* 363 N.W.2d 751, 757 (Minn. 1985). Professor D. Dobbs states that a "plaintiff is entitled to recover for expenditures *reasonably made* in an effort to avoid or minimize damages caused by the defendant's conduct." (Italics ours.) D. Dobbs, *Remedies* § 3.7, at 187 (1973). In *Coleman v. Garrison,* 281 A.2d 616, 619 (Del. Super. Ct. 1971), *appeal dismissed,* 298 A.2d 320 (Del. 1972), the court observed: "Whether [the plaintiff's proposed expenditures] would minimize damages would require a finding that the effort was reasonably warranted by and proportioned to the injury and the consequences to be avoided . . ."

The effect of the findings in the 1984 action is that Marley's expenditures were "reasonably made" to minimize its losses. Thus, they are consequential damages.[4]

---

[4]Travelers cites several cases which hold the *insured* cannot recover against its insurer for expenditures made by the *insured* in an attempt to minimize property damage. *See, e.g., J.L. Simmons Co. v. Lumbermens Mut. Ins. Co.,* 84 Ill. App. 2d 98, 228 N.E.2d 227, 33 A.L.R.3d 1254 (1967). Those cases are distinguishable. The insured's voluntary expenditures are not a "liability imposed by law upon the Insured . . ." See language of ISI's policy at A(1). The insured here has been found liable for Marley's expenditures to minimize the property damage to the orchard.

Nor is *Aetna Cas. & Sur. Co. v. Hanna,* 224 F.2d 499, 503, 53 A.L.R.2d 1125 (5th Cir. 1955) helpful. There, the court held a comprehensive general liability policy did not provide coverage against *mandatory injunctive orders* because the insurer's obligation under the policy is "to pay" sums the insured becomes obligated to pay, not to comply with court orders to take affirmative action. Here, the action was for damages, not injunctive relief.

## B
### POLICY EXCLUSIONS

Nevertheless, Travelers asserts the products hazard exclusion and the completed operations hazard exclusion of the policy apply to bar recovery for the cost of completing ISI's irrigation system. Under those exclusions, the insured is not covered for *property damage* to the insured's product or work which arises out of such product or work. Travelers argues the cost of supplementing ISI's system is excluded as a cost incident to "property damage" to the insured's product. Specifically, it contends ISI's product was damaged because it was defectively designed.

In *Meng v. Bituminous Cas. Corp.*, 626 F. Supp. 1237, 1239 (S.D. Miss. 1986), the court construed exclusions identical to those cited in this policy to exclude insurer liability "for the cost of repairing or replacing the defective parts in the sprinkler system *or for the cost of completing the sprinkler system.*" (Italics ours.) But *Meng* does not address the point made by Marley and relied upon by the superior court here: "property damage", as defined in the policy, means physical damage to tangible property. Does a defective design constitute physical damage to tangible property?

In *Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 282 Or. 401, 578 P.2d 1253 (1978), the Oregon Supreme Court interpreted "property damage," defined in the same manner as here. There, the insured had sold defective studs that were subsequently incorporated into a building. The insured settled a claim for the labor expenses in replacing the defective studs and then sought coverage from its insurer. The court determined the labor expenses were not property damage in the sense of physical injury to tangible property. *Cf. Prudential Property & Cas. Ins. Co. v. Lawrence*, 45 Wn. App. 111, 117–18, 724 P.2d 418 (1986) (obstruction of view is property damage where policy definition required "injury to tangible property", not "physical injury to tangible property").

■ We hold that a design defect is not included in the common and ordinary meaning of the phrase "physical damage to tangible property". Thus, we conclude the design defect did not constitute "property damage" as that term is used in the policy's exclusions for damage to ISI's product or work.

Finally, we note the many authorities cited by Travelers for the proposition that the purpose of the comprehensive general liability policy is to provide protection for damage caused by the product. It is not meant to act as a performance bond. See, for example, *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group*, 37 Wn. App. 621, 628, 681 P.2d 875 (1984); Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1970). This statement of purpose is consistent with our holding here. The damages awarded Marley by the superior court were damages resulting from property damage caused by ISI's irrigation system; *i.e.*, the costs of *completing* ISI's irrigation system are covered because they were necessary to minimize the property damage already evidenced by the stress to the trees.

The judgment of the Superior Court is affirmed.

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court July 5, 1988.