307 F.3d 1127
 DEWITT CONSTRUCTION INC., Plaintiff-Appellant,
v.
CHARTER OAK FIRE INSURANCE COMPANY; Travelers Property Casualty Corporation; Travelers Indemnity Company of America, Defendants-Appellees,
v.
Opus Northwest LLC, Third-party-plaintiff.
DeWitt Construction Inc., Plaintiff-Appellee,
v.
Charter Oak Fire Insurance Company; Travelers Property Casualty Corporation; Travelers Indemnity Company of America, Defendants-Appellants,
v.
Opus Northwest LLC, Third-party-plaintiff.
 No. 01-36013.
 No. 01-36014.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 9, 2002.
 Filed October 9, 2002.
 As Amended on Denial of Rehearing and Rehearing En Banc December 4, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Todd C. Hayes, Stanislaw Ashbaugh, LLP, Seattle, WA, for plaintiff-appellant-appellee.
 Russell C. Love, Thorsrud Cane & Paulich, Seattle, WA, for defendants-appellees-appellants.
 Appeal from the United States District Court for the Western District of Washington; Barbara J. Rothstein, Chief Judge, Presiding. D.C. No. CV-00-01150-BJR.
 Before HILL*, GOULD, and BERZON, Circuit Judges.
 Opinion by Judge GOULD; Concurrence by Judge HILL.
 OPINION
 GOULD, Circuit Judge.
 
 
 1
 This appeal, in a case with jurisdiction based on diversity, follows the district court's grant of summary judgment in an insurance contract dispute about two commercial liability insurance policies purchased by DeWitt Construction, Inc. ("DeWitt") from Travelers Property Casualty Co.[1] ("Travelers"). DeWitt, a sub-contractor on a major development project, negligently installed cement piles, and thereafter had to install new piles that were satisfactory. The initial substandard performance by DeWitt gave rise to damages claims by the general contractor.[2] The scope of the insurance policies' coverage, Travelers' duty to defend DeWitt against the asserted liability on DeWitt's subcontract, and bad faith and Consumer Protection Act claims resulting after Travelers declined the tender of defense are the subject of this dispute.
 
 
 2
 The district court granted DeWitt's partial summary judgment motion on duty to defend, granted Travelers' partial summary judgment motion on coverage, and thereafter dismissed DeWitt's claims for bad faith insurance claims handling and for violation of the Washington Consumer Protection Act. The district court awarded DeWitt $17,043 in defense costs and $43,043.40 in attorneys' fees to be paid by Travelers because it had breached its duty to defend. DeWitt appeals, and Travelers cross-appeals. We have jurisdiction, and we affirm in part and reverse in part.
 
 Factual Background
 
 3
 DeWitt was a subcontractor on a large-scale commercial construction project in Issaquah, Washington. DeWitt subcontracted with the general contractor, Opus Northwest LLC ("Opus"), to drill and place concrete piles into the ground to serve as a primary component of a building's foundation. At the heart of DeWitt's subcontract was DeWitt's promise to achieve a minimum strength in the concrete piles that were to support the building. Before commencing operations, DeWitt purchased a commercial general liability policy and a commercial excess liability policy (collectively "policies") from Travelers.
 
 
 4
 In performing the work, DeWitt at first failed to construct the concrete piles so that they achieved the required strength. The cement in the piles did not harden properly. As a result, the original holes and pile assembles were unusable. DeWitt had to install about 300 more piles to the site in other locations. This also resulted in delays in the overall project pace, abandonment of defective piles, re-engineering of the site's foundation, and the removal and reinstallation of other subcontractors' work. In addition, when DeWitt was moving heavy equipment to install remedial piles, DeWitt damaged buried mechanical and site work completed by other subcontractors. DeWitt's unsatisfactory work required Opus to accelerate the work of other subcontractors to meet its original construction deadline.
 
 
 5
 On January 6, 2000, Opus informed DeWitt that it was asserting a $3.5 million claim against DeWitt for damages arising from DeWitt's alleged negligence in the design and installation of the defective piles. DeWitt tendered Opus's claim to Travelers. Opus filed an arbitration demand against DeWitt on March 24, 2000. DeWitt also tendered the arbitration demand to Travelers. Between April and May, 2000, Travelers and Opus exchanged correspondence in which Opus provided Travelers additional itemization and detail regarding its claimed loss. Travelers made no decision on indemnification and did not provide counsel for DeWitt's defense during its investigation. After DeWitt filed suit in this case for a declaratory judgment, Travelers informed DeWitt that it was denying both defense and indemnification benefits under the policies.
 
 Discussion
 
 6
 On appeal we address: whether the district court erred (1) in finding there is no coverage, (2) in finding that Travelers breached its duty to defend DeWitt, (3) in calculating the damages awarded to DeWitt, and (4) in dismissing DeWitt's bad faith and Consumer Protection Act claims. We review these issues de novo. Delta Sav. Bank v. United States, 265 F.3d 1017, 1021 (9th Cir.2001); Neptune Orient Lines, Ltd. v. Burlington N. and Santa Fe Ry. Co., 213 F.3d 1118, 1119 (9th Cir.2000).
 
 I. Coverage
 
 7
 To determine whether any of DeWitt's claims are covered under the policies, we must consider three questions of contract interpretation: (1) whether there was an "occurrence" giving rise to the alleged damages; (2) whether any of the alleged damages are "property damage"; and (3) whether the property damages are nevertheless barred from coverage by a specific exclusion under the policies.
 
 
 A. Occurrence
 
 
 8
 To be covered under the policies, any alleged property damage must be caused by an "occurrence," which is defined in part as "an accident." DeWitt argues that the defective manufacture of the concrete piles, such that they failed to meet the proper break-strength requirements, constituted an "occurrence" within the meaning of the policies. We agree. As the Washington Supreme Court decided in Yakima Cement Products Co. v. Great American Ins. Co., 93 Wash.2d 210, 608 P.2d 254, 257 (1980), a subcontractor's unintentional mismanufacture of a product constitutes an "occurrence." See also Baugh Constr. Co. v. Mission Ins. Co., 836 F.2d 1164, 1169 (9th Cir.1988) (finding that "negligent construction and negligent design claims fall within the definition of a fortuitous event").
 
 
 9
 In addition, the inadvertent act of driving over the buried mechanical and site work fits squarely within the policies' definition of "occurrence," as there is no indication in the record that the damage was caused intentionally.
 
 
 B. Property Damage
 
 
 10
 The policies at issue in this case provide DeWitt with coverage for "those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." "Property damage" means: (a) "physical injury to tangible property, including all resulting loss of use of that property" or (b) "loss of use of tangible property that is not physically injured."[3]
 
 
 11
 DeWitt alleges three types of property damage in this case: (1) damage to the construction site by impaling it with unremovable obstacles, (2) damage to the work of other subcontractors that had to be removed and reconstructed due to DeWitt's negligence, and (3) damage to buried mechanical piping and site work while moving equipment to replace the under-strength piles.
 
 
 12
 We conclude that the alleged damage to the construction site caused by DeWitt impaling it with unremovable piles is not "property damage" under the policies. For faulty workmanship to give rise to property damage, there must be property damage separate from the defective product itself. Yakima Cement, 608 P.2d at 258-59 (no property damage occurred due to the incorporation of defective concrete panels where record was devoid of evidence that the building value was diminished).[4] See also Marley Orchard Corp. v. Travelers Indem. Co., 50 Wash.App. 801, 750 P.2d 1294, 1297 (1988) (stress to trees was property damage caused by the installation of a defective sprinkler system, unlike Yakima Cement where there was no damage separate from the defect).
 
 
 13
 DeWitt argues that the site was impaled with useless concrete piles and had to be redesigned to accommodate the remedial piles. DeWitt does not argue, however, that the remedial design was qualitatively worse than the original. Because DeWitt does not allege physical injury apart from the defective piles themselves, there is no issue of material fact in dispute. We affirm the district court's grant of summary judgment on coverage for the alleged property damage to the construction site by the "impaling."
 
 
 14
 We turn next to whether the alleged damage to the work of other subcontractors, which had to be removed and destroyed as a result of DeWitt's installation of defective piles, is property damage within the scope of the policies. We find that it is. In Baugh, we applied Washington law and found property damage to tenant improvements when those improvements had to be removed as a result of the installation of defective concrete panels in a building. 836 F.2d at 1170. Similarly, Opus had to hire a demolition subcontractor to tear out pile-caps that had been installed over the defective piles because they were no longer useful. Baugh controls our conclusion that there was property damage to the extent subcontractors' work had to be removed and destroyed.
 
 
 15
 We also find that the alleged damage to the buried mechanical and site work caused by DeWitt's movement of heavy equipment was "physical injury to tangible property" and thus constituted property damage within the scope of the policies.
 
 
 C. Applicability of Exclusions
 
 
 16
 Because we have found that DeWitt has proven property damages within the scope of the policies to the other subcontractors' work that was torn out or otherwise destroyed and to the other subcontractors' work that was damaged by operation of DeWitt's equipment, we next analyze whether any exclusion under the policies nevertheless bars coverage. Travelers bears the burden of proving that property damages that fall within the scope of the policy are excluded from coverage under the two policies purchased by DeWitt. See, e.g., Am. Star Ins. Co. v. Grice, 121 Wash.2d 869, 854 P.2d 622, 625-26 (1993) (insurer bears the burden of proving that a loss is not covered because of an exclusionary provision). Exclusions are strictly construed against the insurer because they are contrary to the protective purpose of insurance. See Diamaco, Inc. v. Aetna Cas. & Sur. Co., 97 Wash.App. 335, 983 P.2d 707, 711 (1999).
 
 
 1. Damage to Other Subcontractors' Work Performed on Defective Piles
 
 
 17
 The "impaired property" exclusion does not bar coverage for property damage to the destroyed work that other subcontractors had performed on the defective piles. The impaired property exclusion, as stated in the policies, only applies "if [the impaired property] can be restored to use by: a) the repair, replacement, adjustment or removal of `[the insured's] product' or `[the insured's] work'; or b) [the insured] fulfilling the terms of the contract or agreement." DeWitt's installation of additional piles did not "restore to use" the work of other subcontractors. The other subcontractors' work (e.g., the pile caps) was removed from the defective piles, destroyed in the removal process, and remained destroyed notwithstanding the subsequent remedial work by DeWitt. The destroyed work of other subcontractors was not merely impaired, nor was it restored to use.
 
 
 18
 The "course of operations" exclusion in the general liability policy bars coverage for damage to "that particular part of any property" on which DeWitt is "performing operations, if the `property damage' arises out of those operations." In addition, the exclusion bars coverage for damage to "that particular part of any property" that must be repaired or replaced because DeWitt's work "was incorrectly performed on it."
 
 
 19
 The sequence of the work performed by other subcontractors in relation to DeWitt's work precludes the applicability of the course of operations exclusion. DeWitt installed piles by drilling holes, filling them with concrete, and then inserting rebar cages into the concrete. After DeWitt completed these operations, DeWitt began work in another area. Only then did the other subcontractors perform work on the defective piles. Neither component of the course of operations exclusion bars coverage: DeWitt was not performing operations on the work of other subcontractors when the damage occurred, nor did DeWitt incorrectly perform operations on the work of other subcontractors because that work (e.g., the pile caps) did not even exist when DeWitt performed its operations.
 
 
 20
 The "care, custody, and control" exclusion in the umbrella policy bars coverage for property damage to "property in [DeWitt's] care, custody, or control." This exclusion does not bar coverage for damage to the work of other subcontractors that performed work on the defective piles. DeWitt was in control of the areas in which piles were being installed only while operations were being performed in those areas. Once DeWitt finished installing a pile, DeWitt did not retain control over those site areas.[5] To find otherwise would incorrectly impute control for a particular piece of property for the duration of the construction project as soon as a subcontractor performs any operation on that area, even if only for a limited time. Such a broad reading of the care, custody, and control exclusion would be inconsistent with the controlling principle of Washington law that exclusions should be narrowly construed and read in favor of the insured. See Diamaco, Inc., 983 P.2d at 711.
 
 
 21
 Because there is no policy exclusion that specifically bars coverage for the property damage to the work that other subcontractors performed on the defective piles, we reverse the district court's grant of summary judgment to Travelers on coverage of this claim.[6]
 
 
 2. Damage to Buried Mechanical and Site Work
 
 
 22
 The impaired property exclusion does not bar coverage for the damage to buried mechanical and site work that was crushed by the movement of heavy equipment. That work was not restored to use through remedial steps taken by DeWitt; on the contrary, this property damage occurred when DeWitt was attempting to redress the initial mistake.
 
 
 23
 Whether the course of operations exclusion applies to damage to buried mechanical and site work cannot be decided on summary judgment at this time because there is a factual dispute as to whether the damaged work was on "that particular part" of the property on which DeWitt was performing operations. DeWitt argues that the damage occurred while driving heavy equipment en route to the particular part of the site where the remedial piles were being installed. Travelers, however, argues that the damage occurred when DeWitt moved heavy equipment in the particular area on which DeWitt was performing operations. The record is not instructive. Because there is a genuine issue of material fact, and because on summary judgment we view the facts in the light most favorable to the nonmoving party, we conclude that the course of operations exclusion does not bar coverage for the damage to buried site and mechanical work as a matter of law based on the current record. We therefore reverse in part the district court's grant of summary judgment on coverage and remand to the district court for further factual determinations and proceedings on the applicability of the course of operations exclusion to the damage to buried site and mechanical work.
 
 
 24
 As with the course of operations exclusion, there is also a factual dispute involving the applicability of the care, custody, and control exclusion. DeWitt contends that it only had control over the specific locations where it was actively installing piles. There is a question of fact regarding the proximity of the areas where the buried mechanical and site work was damaged to the areas where DeWitt was actively installing additional piles. Because there remains a genuine issue of material fact as to the applicability of the care, custody, and control exclusion, we reverse the district court's grant of summary judgment on coverage of this claim and remand for further factual determination.
 
 
 D. Consequential Damages
 
 
 25
 The insurance policies at issue here provide for indemnification of the insured for "those sums that the insured becomes legally obligated to pay as damages because of ... `property damage' to which the insurance applies." In construing similar language, the Washington Court of Appeals in Marley Orchard determined that the policy allowed for consequential damages. 750 P.2d at 1297. The plaintiff in Marley was allowed to recover for expenditures reasonably made in an effort to avoid or minimize damages. Id. See also Gen. Ins. Co. of Am. v. Gauger, 13 Wash.App. 928, 538 P.2d 563, 566 (1975) (finding that once the definition of property damage is satisfied, "any and all damages flowing therefrom and not expressly excluded from the policy are covered").
 
 
 26
 Because the policies cover consequential damages, the district court correctly noted that even though intangible economic injury does not constitute property damage under the policy, "intangible economic injuries may result from physical injury to tangible property." We remand to the district court to determine the consequential damages (e.g., delay costs), if any, that flowed from property damage to the work of other subcontractors. Also, if the factfinder concludes that the property damage to buried mechanical and site work is not barred by any of the exclusions, then DeWitt is entitled to recover for delay costs that flowed directly from those damages. We express no view on these issues, which are properly within the domain of the district court in its further proceedings.
 
 II. Duty to Defend
 
 27
 Under Washington law, the duty to defend and the duty to indemnify are separate obligations, and the duty to defend is broader than the duty to indemnify. Baugh, 836 F.2d at 1168. "The duty to defend arises whenever a lawsuit is filed against the insured alleging facts and circumstances arguably covered by the policy. The duty to defend is one of the main benefits of the insurance contract." Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 951 P.2d 1124, 1126 (1998). To determine whether a duty to defend exists, we examine whether the allegations for coverage are conceivably within the terms of the policy. Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 1 P.3d 1167, 1172 (2000). Then we determine whether an exclusion clearly and unambiguously bars coverage. Id.
 
 
 28
 Because we have concluded that at least some of the claims tendered to Travelers by DeWitt involve property damage within the scope of the policies that is not clearly excluded from coverage, Travelers did have a duty to defend. As explained below, that duty was triggered by the filing of the arbitration demand. We affirm the district court's grant of summary judgment on the duty to defend.[7]
 
 
 29
 When, as here, an insurer breaches its duty to defend, recoverable damages for the insured include: "(1) the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action, and (2) the amount of the judgment entered against the insured." Kirk, 951 P.2d at 1126. See also Waite v. Aetna Cas. and Sur. Co., 77 Wash.2d 850, 467 P.2d 847, 851 (1970) (an insurer who wrongfully refuses to defend "will be required to pay the judgment or settlement to the extent of its policy limits" and reimburse the defense costs) (emphasis added).
 
 
 30
 Because we have determined that the policies do cover property damage to the subcontractors' work on the defective piles, and because the factfinder may conclude that the buried mechanical and site work is also covered by the policies, on remand the district court should consider (1) the portion of a reasonable settlement, if any, that can fairly be said to be related to the covered property damage; and (2) whether any such portion is recoverable as damages for breach of duty to defend.[8]
 
 
 31
 The district court erred by calculating attorneys' fees and costs from the date that DeWitt tendered Opus's claim to Travelers, February 16, 2000. The duty to defend is triggered by a "suit." See, e.g., Griffin v. Allstate Ins. Co., 108 Wash.App. 133, 29 P.3d 777, 781 (2001) (noting that in Washington the duty to defend arises upon the filing of a complaint). Because the policies include arbitration proceedings within the definition of "suit," the duty to defend was triggered on the date the arbitration demand was filed, March 24, 2000. Therefore, the award of attorneys' fees and costs should be calculated from March 24, 2000. We reverse and remand to the district court to properly determine the attorneys' fees and costs.
 
 III. Extra-contractual Claims
 
 32
 To establish the tort of bad faith in the insurance context, the insured must show that the insurer's actions were "unreasonable, frivolous, or unfounded." Kirk, 951 P.2d at 1126. "Bad faith will not be found where a denial of coverage or failure to provide a defense is based upon a reasonable interpretation of the insurance policy." Id. Here, Travelers's duty to defend was not unambiguous. The arbitration demand was vague as to the nature of the damages giving rise to the claims, referencing "additional material damages" instead of noting specific property damage. The policy coverage was unclear in light of legitimate factual and legal issues pertinent to contract interpretation and application. We affirm the district court's grant of summary judgment dismissing DeWitt's bad faith claim.
 
 
 33
 DeWitt also appeals the district court's grant of summary judgment of its claim under the Washington Consumer Protection Act (CPA), RCW 19.86.010 et seq. Under the CPA, DeWitt must demonstrate (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered. Indus. Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 792 P.2d 520, 528 (1990). The first part of this analysis is closely related to the bad faith standard that we have already held was not satisfied by DeWitt. For essentially the same reasons that we conclude the district court appropriately dismissed the claim for bad faith, the district court appropriately dismissed the CPA claims against the insurer. We affirm the district court's grant of summary judgment for the CPA claims.
 
 Conclusion
 
 34
 We affirm in part and reverse in part the district court's grant of summary judgment on coverage. Specifically, and as explained above, we affirm denial of coverage on the alleged damage to site from defective piles; we reverse denial of coverage on the subcontractors' work that was destroyed because of the defective piles (and direct the district court to enter a partial summary judgment to DeWitt on this issue); and we remand for further proceedings and factual determinations pertinent to application of the course of operations and of the care, custody, and control exclusions, as they may relate to the damage to buried subcontractors' work caused by DeWitt's movement of equipment to install new piles. We affirm the grant of summary judgment to the insured and against the insurer for breach of the duty to defend. On that issue, we remand for a recalculation of attorneys fees and costs subsequent to the arbitration demand, and for consideration whether there are other recoverable damages for breach of the duty to defend as to any portion of the settlement between DeWitt and Opus that reflects covered property damage. We finally affirm the grant of summary judgment to the insurer rejecting the bad faith and CPA claims because the insurer's position was not unreasonable, frivolous or unfounded. Both parties shall bear their own costs for appeal.
 
 
 35
 AFFIRMED IN PART AND REVERSED IN PART, AND REMANDED for further proceedings consistent with this disposition.
 
 
 
 Notes:
 
 
 *
 The Honorable James C. Hill, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation
 
 
 [1]
 Because Charter Oak Fire Insurance Company and Travelers Indemnity Company of America are subsidiaries of Travelers Property Casualty Company, the defendants are hereby collectively referred to as "Travelers"
 
 
 [2]
 DeWitt has entered into a settlement agreement with the general contractor, Opus Northwest LLC ("Opus"). Opus has agreed not to file a judgment implementing the settlement pending the final outcome of this litigation between DeWitt and Travelers
 
 
 [3]
 DeWitt did not argue that any of Opus's claims fall within the "loss of use" definition of property damage, and we do not address that issue on appeal
 
 
 [4]
 In this case, even a showing of diminished value of the site would be insufficient to show property damage. Property damage under this policy requires "physical injury," whereas the policy inYakima Cement only required "injury."
 
 
 [5]
 There is no indication in the record that DeWitt had supervisory control over the subcontractors who performed work on the piles after DeWitt had concluded its own operations
 
 
 [6]
 Because there are no fact issues pertinent to coverage for the destroyed work of other subcontractors that attached to the defective piles, we direct the district court on remand to give partial summary judgment to DeWitt on this issueCf. Bird v. Glacier Elec. Coop., Inc., 255 F.3d 1136, 1152 (9th Cir.2001) (courts may sua sponte grant summary judgment to a nonmovant when there has been a summary judgment motion by one party and no cross-motion).
 
 
 [7]
 Because we have determined that the arbitration demand alleged claims covered by the policies, we do not need to reach, and therefore do not decide, the issue of whether, under any theory including that relied upon by the district court, Travelers would have had a duty to defend even if coverage ultimately had been barred on summary judgment. More specifically, we need not decide and therefore express no view whether the district court's finding of a duty to defend absent a coverage determination for an interim period, before the coverage decision was made by the insurer, was correct
 
 
 [8]
 We reject DeWitt's argument that Washington law permits no allocation of settlement if the insurer breaches the duty to defend. First, the Washington Supreme Court, inKirk v. Mt. Airy Ins. Co., 951 P.2d 1124, 1128 (Wash.1998), held that when an insurer breaches the duty to defend in bad faith, the insurer is estopped from asserting that alleged claims are outside the scope of coverage. Absent bad faith, the insurer is "liable for the judgment entered provided that the act creating liability is a covered event and provided the amount of the judgment is within the limits of the policy." Id. at 1126 (emphasis added). Because there was no bad faith here, see infra Section III, allocation is appropriate. To conclude otherwise would be to afford the same remedy in cases where the insurer has breached the duty to defend in good faith as in cases where such breach was in bad faith. Second, DeWitt's partial reliance on Nautilus v. Transamerica Title Ins. Co., 534 P.2d 1388, 1393 (Wash.App.1975), is misplaced because there the court rejected allocation where there was one claim and there were several legal theories of recovery. Here we have several claims; coverage of one claim does not automatically bring the others into the scope of the policy absent bad faith.
 
 
 HILL, Circuit Judge, concurring:
 
 36
 Were we writing on the proverbial clean slate, I should be in serious doubt that the failure of the insured, DeWitt, to have performed its contracted work properly constituted an occurrence under the commercial liability policies. It seems to me that this goes far towards substituting general liability coverage for a performance guarantee underwritten by an insurance company.
 
 
 37
 However, evaluation of such doubt is not necessary in this case. We are dealing with a state law case, and the Yakima Cement Products Co. case, cited in the opinion, is a clear statement by the highest court of the state that, in Washington, such a failure is an occurrence. I, therefore, concur.