IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANNA K. ANDREWS and ERIC J. ANDREWS, husband and wife, | No. 84795-3-I |
| Plaintiffs/Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| FREEWAY MOTORS, INC., JOHN MCALPINE, ALEXANDRA FOX, USAA CASUALTY INSURANCE COMPANY ("USAA"), | |
| Defendants, | |
| and | |
| PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE ("PURE"), | |
| Intervenor/Petitioner. | |

CHUNG, J. — Anna Andrews was injured in an accident involving three vehicles. She and her husband sued the other drivers, Alexandra Fox and John McAlpine, as well as Freeway Motors, McAlpine's employer. Andrews[1] had underinsured motorist coverage through Privilege Underwriters Reciprocal Exchange (PURE), who intervened in the suit. Andrews entered into a covenant judgment settlement with Fox. After a reasonableness hearing, the court determined the amount of $2.8 million in principal for the covenant settlement

---

[1] For simplicity, we refer to plaintiffs Anna and Eric Andrews, who filed suit as a marital community, in the singular.

was reasonable. The court denied PURE's motion for a determination that it was entitled to a trial on damages, concluding it was bound by the amount the court approved after a reasonableness hearing pursuant to RCW 4.22.060.

We accepted discretionary review of the court's certified question: whether Andrews's UIM insurer, PURE, who intervened and participated in the reasonableness hearing that determined the covenant settlement between Andrews and Fox, the tortfeasor, to be reasonable, is entitled to a separate jury trial on damages. We conclude that the settlement that was determined to be reasonable by the trial court provides the presumptive measure of the damages that Andrews is legally entitled to recover, and that amount is binding on PURE because it had notice and an opportunity to intervene. We affirm the trial court's orders entering judgment on the covenant judgment and denying PURE's motion seeking not to be bound by the judgment and award fees to Andrews as the prevailing party.

FACTS

In April 2018, Alexandra Fox collided with a vehicle John McAlpine was driving for his employer, Freeway Motors, Inc. That collision caused another collision with Anna Andrews's vehicle, causing her serious and permanent injuries. In March 2021, Anna and Eric Andrews filed a lawsuit against Freeway Motors, Inc., McAlpine, and Fox for damages caused by the accident. Andrews had $5.5 million of underinsured motorist insurance ("UIM") coverage through

PURE.[2] In July 2021, the trial court granted PURE's CR 24(a) motion to intervene as of right in the suit.

On June 27, 2022, the trial court granted Andrews's partial summary judgment motion and determined as a matter of law that Andrews "[wa]s fault-free in all matters related to this collision and damages" and Fox "was negligent and a proximate cause of Plaintiffs' injuries and damages." The court also dismissed the defendants' affirmative defenses and denied Freeway Motors' and McAlpine's request for a determination as a matter of law as to negligence and proximate cause. Thereafter, Andrews settled with Freeway Motors and McAlpine for an undisclosed amount.[3]

On August 17, 2022, Andrews filed a notice stating she had settled with Fox, "subject to entry of judgments, judicial reasonableness hearings and/or arbitration," and that "[t]he trial involving defendant Fox's liability for damages may be stricken."[4] Fox had $300,000 in liability coverage from USAA Casualty Insurance Company (USAA). In the covenant settlement with Andrews, Fox agreed to the entry of judgment against her in the "minimum amount of

---

[2] Andrews purchased from PURE primary UIM coverage of $500,000 and an additional $5 million in umbrella UIM coverage. The umbrella policy required PURE to pay damages, defined as the "monetary amount that the insured is legally entitled to recover . . . in order to resolve a claim," only when its insured's damages are "in excess of the underlying insurance or the minimum required underlying limits, whichever is greater." Prior to filing, Andrews made a demand of PURE for the limits of her coverage. PURE made a counteroffer of $225,000, conditioned on waiver of any personal injury protection or medical payments and subrogation claims, but two weeks later, it withdrew that offer. Andrews and PURE did not reach a settlement agreement.

[3] This settlement resolved all issues between Andrews and McAlpine and Freeway Motors. Andrews stipulated to an order dismissing with prejudice all her claims against those two parties.

[4] After Andrews settled with McAlpine and Freeway Motors but before her covenant settlement with Fox in August, she offered PURE the opportunity to buy out her liability claims against Fox, which PURE declined.

$600,000," to "negotiate in good faith a reasonable amount of a full covenant judgment for stipulation and/or presentation to the Court for approval as reasonable," and to assign her claims to Andrews in exchange for Andrews's agreement not to execute that judgment against her personally.[5] In September 2022, counsel for Andrews and Fox exchanged e-mails "[c]onfirming our agreement on a full stipulated judgment amount of [$]2,800,000."

Andrews then moved the court for a hearing under RCW 4.22.060 to determine the reasonableness of the settlement amount. PURE filed a motion seeking an order establishing that it would not be bound by the outcome of a reasonableness hearing and was entitled to a trial on damages. The trial court denied PURE's motion as premature.

At the reasonableness hearing, PURE contested the damages that Andrews and Fox presented to the court for its determination, including any award of pre-judgment interest. After the hearing, the trial court entered an order determining the $2.8 million principal amount of the covenant judgment to be reasonable. However, the trial court expressly found that a settlement of more than $4.5 million "consisting of principal and prejudgment interest" would not be reasonable and reserved ruling on pre- and post-judgment interest. Subsequently, the trial court entered judgment in favor of Andrews in the amount of $2.8 million in principal, with no pre-judgment interest, and with post-judgment interest of 12 percent compounded annually.

---

[5] After Andrews settled with Fox, Fox's liability insurer, USAA, intervened. Andrews amended her complaint to add USAA as a defendant and to add claims against PURE and USAA for bad faith, breach of contract, and violations of the Consumer Protection Act, RCW ch. 19.86, and the Insurance Fair Conduct Act, RCW 48.30.010-.015.

4

PURE renewed its motion for an order establishing that it was entitled to a trial on damages and was not bound by the amount determined to be reasonable after the RCW 4.22.060 hearing. In the alternative, PURE requested that the court certify a question for discretionary review under RAP 2.3(b)(4). Andrews opposed the motion, arguing that PURE fully and actively participated in the reasonableness determination. On November 18, 2022, the trial court determined that the settlement was binding on PURE. It also certified the following question to this court:

> Whether a plaintiff's uninsured motorist insurer is subject to the results of an RCW 4.22.060 Reasonableness Hearing directed at a defendant tortfeasor's liability insurer and obligated to pay following entry of judgment or whether they are entitled to a separate jury trial to determine damages?

PURE timely sought discretionary review of the court's order binding it to the outcome of the court's reasonableness hearing, raising the question the trial court certified to this court. A commissioner of this court granted discretionary review under RAP 2.3(b)(1) and (4).[6]

Subsequently, after oral argument before this court, PURE moved to dismiss the appeal. For reasons discussed below, we deny the motion.

## DISCUSSION

### I.    Certified Question

PURE assigns three errors, all raising "a single, purely legal question: Did the trial court err in concluding that the reasonableness determination and covenant judgment precludes the UIM insurer from litigating the amount the UIM

---

[6] The trial court's order certifying the question stayed proceedings against PURE, but the court allowed discovery on claims against Fox's insurer USAA to continue.

insured is legally entitled to recover from the tortfeasor?" As the certified question raises an issue of law, our review is de novo. See, e.g., State v. LG Elecs., Inc., 186 Wn.2d 1, 7, 375 P.3d 636 (2016) (reviewing de novo legal questions certified by trial court).

In Washington, it has long been established that "an insurer will be bound by the 'findings, conclusions and judgment' entered in the action against the tortfeasor when it has notice and an opportunity to intervene in the underlying action." Fisher v. Allstate Ins. Co., 136 Wn.2d 240, 246, 961 P.2d 350 (1998) (quoting Finney v. Farmers Ins. Co., 21 Wn. App. 601, 618, 586 P.2d 519 (1978), aff'd, 92 Wn.2d 748, 600 P.2d 1272 (1979)); East v. Fields, 42 Wn.2d 924, 925, 259 P.2d 639 (1953) ("when an insurer has notice of an action against an insured, and is tendered an opportunity to defend, it is bound by the judgment therein upon the question of the insured's liability"). This rule, often referred to as the "Finney-Fisher" rule, applies both to liability and to UIM insurance. See Fisher, 136 Wn.2d at 246-47 (noting with approval that Finney, 21 Wn. App. at 618, extended the rule from East, which involved liability insurance, to UIM insurance); Lenzi v. Redland Ins. Co.,140 Wn.2d 267, 282, 996 P.2d 603 (2000) (the UIM insurer who received timely notice of action, yet did not intervene, was bound by plaintiffs' default judgment against the tortfeasor); Hawkins v. ACE Am. Ins. Co., ___ Wn. App. 2d ___, ___ n.12, 558 P.3d 157, 166 n.12 (2024) (discussing cases applying East rule to UIM insurance).

As to the extent to which an insurer is bound, in Mutual of Enumclaw Insurance Co. v. T & G Construction, Inc., our Supreme Court addressed

whether, in the absence of an insurer's bad faith and if the liability insurer had participated in the litigation, a covenant judgment settlement that a court has deemed reasonable established the fact of liability and the presumptive amount of damages for purposes of coverage.[7] 165 Wn.2d 255, 266-67, 199 P.3d 376 (2008) (T & G). Applying the Finney-Fisher rule, the court held, "When the insurer had an opportunity to be involved in a settlement fixing its insured's liability, and that settlement is judged reasonable by a judge, then it is appropriate to use the fact of the settlement to establish liability and the amount of the settlement as the presumptive damage award for purposes of coverage." Id. at 267. More recently, we have confirmed that "binding the insurer to the settlement amount is subject to the insurer being given notice of the settlement and the opportunity to be heard on the issue of reasonableness." Hawkins, 558 P.3d at 171.

PURE challenges on several grounds the preclusive effect of the covenant judgment between Andrews and Fox on the amount the UIM insured is legally entitled to recover from the tortfeasor. We address each argument in turn.

---

[7] A covenant judgment is a form of settlement agreement that "involves three features: (1) a stipulated or consent judgment between the plaintiff and insured, (2) a plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer." Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012). A covenant judgment "does not release a tortfeasor from liability; it is simply 'an agreement to seek recovery only from a specific asset—the proceeds of the insurance policy and the rights owed by the insurer to the insured.' " Besel v. Viking Ins. Co. of Wisconsin, 146 Wn.2d 730, 737, 49 P.3d 887 (2002) (quoting Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 399, 823 P.2d 499 (1992)). Under RCW 4.22.060, a court may hold a reasonableness hearing to determine whether a covenant judgment settlement is reasonable. Bird, 175 Wn.2d at 767 (rejecting the insurer's claim to a constitutional right to a jury trial on the reasonableness of a covenant judgment under RCW 4.22.060).

A.  Effect of Intervention

PURE first argues that because it intervened, it cannot be bound by the trial court's reasonableness determination. PURE contends that the Finney-Fisher rule is "narrow" and "akin to the adage *silence gives consent*," and, thus, a settlement is given preclusive effect only if an insurer chooses not to intervene despite notice and an opportunity to do so. We disagree.

T & G demonstrates the Finney-Fisher rule is not so narrow as PURE contends. As in this case, T & G involved an insurer who had notice of the litigation, did not participate in the covenant judgment settlement negotiations, and argued it was not bound by a settlement that was deemed reasonable after a hearing in which it participated. A homeowners' association sued their homes' developer regarding siding that molded and rotted. 165 Wn.2d at 259. The siding subcontractor, T & G Construction, one of dozens of parties in the liability suit, was defended by its insurer, Mutual of Enumclaw Insurance Company (MOE), under a reservation of rights. Id. at 260. T & G settled with and released its subcontractors but did not participate in final settlement talks involving the homeowners and other parties. Id. Pursuant to a court order, T & G entered into mediation with the remaining parties. With MOE's knowledge, but without its consent or participation, T & G settled with the remaining parties for $3.3 million and the assignment of its rights against MOE. Id. at 261. The parties sought a

reasonableness determination, and MOE intervened to challenge the settlement. Id. at 261, 269.[8] The trial court found the settlement reasonable.[9] Id. at 261.

In a separate coverage lawsuit, MOE sought a declaratory judgment that its insured, T & G, was not liable and MOE did not owe any coverage because the statute of limitations had expired. Id. at 262. The Supreme Court held summary judgment against MOE was proper, holding, "When the insurer had an opportunity to be involved in a settlement fixing its insured's liability, and that settlement is judged reasonable by a judge, then it is appropriate to use the fact of the settlement to establish liability and the amount of the settlement as the presumptive damage award for purposes of coverage." Id. at 267. The court reasoned that this was "a reasonable extension from Fisher and its progeny" and was also consistent with authority regarding the preclusive effect of covenant judgment settlements: " 'If a reasonable and good faith settlement amount of a covenant judgment does not measure an insured's harm, our requirement that such settlements be reasonable is meaningless.' " T & G, 165 Wn.2d at 267 (quoting Besel v. Viking Ins. Co. of Wisconsin, 146 Wn.2d 730, 739, 49 P.3d 887 (2002)).[10]

---

[8] MOE "filed a motion to intervene for the 'purpose of challenging the reasonableness of the settlement between Plaintiff and T & G,' " which the court granted. See Villas at Harbour Pointe Owners Ass'n ex rel. Constr. Assocs., Inc. v. Mut. of Enumclaw Ins. Co., 137 Wn. App. 751, 757, 154 P.3d 950 (2007).

[9] On reconsideration, the trial court reduced damages to $3 million. See T & G, 165 Wn.2d at 261. This court affirmed the determination that the settlement was reasonable. Id. at 262 (citing Villas at Harbour Pointe Owners Ass'n, 137 Wn. App. at 754).

[10] As the court in Besel noted, a reasonableness hearing protects insurers from excessive judgments especially when, as here, "the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness." 146 Wn.2d at 739.

The Finney-Fisher rule applies to this case as well. Like MOE in T & G, PURE received notice of the liability suit against the alleged tortfeasors and intervened. After the trial court ruled that Andrews was fault-free and Fox was liable, Andrews gave notice to PURE of a covenant settlement with Fox and moved for the court to determine the settlement reasonable. PURE argued it could not be bound by the court's determination. Nonetheless, at the reasonableness hearing, PURE appeared and contested the reasonableness of the covenant judgment that Andrews and Fox presented to the court for its evaluation.[11] And PURE was successful insofar as prejudgment interest was concerned: while the court determined that the settlement's $2.8 million principal amount was reasonable, it expressly found that a settlement of more than $4.5 million "consisting of principal and prejudgment interest" would not be reasonable and reserved ruling on pre- and post-judgment interest.

In support for its argument that it is not bound under the Finney-Fisher rule, PURE cites to Lenzi, 140 Wn.2d at 270-72. There, the plaintiffs obtained a $212,671 default judgment against a 100 percent at-fault uninsured motorist, upon which the trial court entered judgment, but the plaintiff's UIM insurer refused to be bound and pay the plaintiffs, its insured. The trial court granted the plaintiffs declaratory relief, binding their UIM insurer to the default judgment. Id. at 273. The Supreme Court agreed with the trial court, reasoning that the UIM insurer "received the timely notice required by the Finney-Fisher rule, yet did not intervene." Id. at 282.

---

[11] On interlocutory review under RAP 2.3(b)(4), our review is limited to the controlling question of law, not the court's determination of reasonableness.

PURE argues that because it did the opposite of the insurer in <u>Lenzi</u>—it intervened—the result in the present case should also be the opposite—it should not be bound to the Andrews-Fox covenant settlement. But in <u>Lenzi</u>, the "key consideration" was that the UIM insurer in that case " 'might have litigated' the damages issue, but chose not to by not intervening." <u>Id.</u> at 280. UIM insurers are not bound by the outcome of a liability suit because they have intervened; rather, they are allowed to intervene because they can be bound, based on their contract with the insured. <u>See</u> <u>id.</u> Indeed, in its motion to intervene below, PURE recognized this, stating "it could be deemed bound by any result."

In this case, PURE had notice and the choice of whether to intervene, as did the insurer in <u>Lenzi</u>, so the <u>Finney-Fisher</u> rule should likewise apply here. We agree with Andrews that it would make little sense to bind an insurer who has notice and does not participate to the outcome of a prior adjudication, but not an insurer who has notice and *does* participate. We reject PURE's attempt to turn the <u>Finney-Fisher</u> rule on its head in this manner.[12]

---

[12] PURE also attempts to narrow the <u>Finney-Fisher</u> rule by arguing that the Andrews-Fox covenant settlement "is not preclusive against PURE for an independent reason: because it is not equivalent to a contested judgment" and "is instead based on a stipulation that excluded PURE." But none of the cases PURE cites turns on an insurer's intervention or participation in the settlement. <u>See</u> <u>State Farm Fire & Cas. Co. v. Justus</u>, 199 Wn. App. 435, 444, 448, 398 P.3d 1258 (2017) (insurer was not bound to liability, and therefore coverage, when the court found a covenant settlement reasonable, but did not determine whether the defendant's actions were intentional and therefore timebound); <u>Green v. City of Wenatchee</u>, 148 Wn. App. 351, 366-67, 199 P.3d 1029 (2009) (reversing a reasonableness determination where the findings binding a malpractice insurer were not required under CR 52 and court failed to consider the merits of the released insured's defenses); <u>Yakima Cement Prods. Co. v. Great Am. Ins. Co.</u>, 14 Wn. App. 557, 562, 544 P.2d 763 (1975) (insurer could not be bound to findings not required by Fed. R. Civ. P. 52). Instead, these cases demonstrate the unremarkable proposition that insurers are bound by a settlement only to the extent it determined any material finding of fact essential to the judgment of tort liability. <u>See</u> <u>T & G</u>, 165 Wn.2d at 268 ("[A]n insurer is not entitled to litigate factual questions that were resolved in the liability case by judgment or arm's length settlement."); <u>East</u>, 42 Wn.2d at 926 ("[T]he insurer is bound by any material *finding of fact* essential to the judgment of tort liability, which is also decisive of the question of the coverage of the policy of insurance.").

B. UIM Context

PURE argues for a distinction between third party liability insurance and first-party UIM insurance, claiming that because UIM coverage provides a "unique context," binding it to a court's determination that a covenant judgment is reasonable would "contradict the very nature of UIM coverage." We disagree.

Every insurer selling automotive casualty insurance in Washington State must also offer UIM insurance "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles." RCW 48.22.030(2). An "underinsured motor vehicle" includes a motor vehicle "with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1). "UIM coverage is a 'floating layer' above the available limits of the tortfeasor's liability policy." Farmers Ins. Co. v. Lautenbach, 93 Wn. App. 671, 676, 963 P.2d 965 (1998) (quoting Groves v. Progressive Cas., 50 Wn. App. 133, 136, 747 P.2d 498 (1987)).

"A fundamental [public] policy underlying UIM is full compensation for those injured in automobile accidents." Allstate Ins. Co. v. Dejbod, 63 Wn. App. 278, 281, 818 P.2d 608 (1991) (citing Hamilton v. Farmers Ins. Co. of Wash., 107 Wn.2d 721, 727, 733 P.2d 213 (1987)). This means that "liability and UIM insurance, working together, are intended to fully compensate claimants for those

12

amounts that they are legally entitled to recover from liable tortfeasors, up to the sum of applicable liability and UIM limits." Id. at 283.

A UIM insurer stands in the shoes of the tortfeasor and may assert liability defenses available to the tortfeasor. Ellwein v. Hartford Acc. & Indem. Co., 142 Wn.2d 766, 780, 15 P.3d 640 (2001), overruled on other grounds by Smith v. Safeco Ins. Co., 150 Wn.2d 478, 78 P.3d 1274 (2003). Thus, "[t]he relationship between a UIM insurer and its insured 'is by nature adversarial and at arm's length.' " Id. (quoting Fisher, 136 Wn.2d at 249).

"A second fundamental policy underlying UIM is that liability insurance is primary, while UIM insurance is secondary." Dejbod, 63 Wn. App. at 284. Unlike a third-party liability insurer, a UIM insurer has a statutory right to reimbursement under RCW 48.22.040(3). "Whether the injured insured obtains full recovery of the tortfeasor's liability insurance limits is irrelevant to the determination of underinsurance payments." Hamilton, 107 Wn.2d at 727. "In other words, the underinsurer always is allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages." Id. at 728. And "[an] underinsurer can succeed to the rights of its insured against the tortfeasor by (1) paying the underinsurance benefits prior to the release of the tortfeasor and (2) substituting a payment to the insured in an amount equal to the tentative settlement." Id. at 734.

Thus, to be sure, there are differences between third party liability insurers and UIM insurers. But PURE provides no binding authority for its argument that because of these differences, "if the UIM insurer preserves and invokes its rights

by intervening in the tort action as PURE did here, then the UIM insurer has secured its own independent right to defend as the tortfeasor could."[13] When a party cites no authority in support of a proposition, we may assume there is none. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Nor has PURE identified any compelling reason for us to depart from well-established precedent and announce a different rule in the UIM context. As discussed above, courts have applied the Finney-Fisher rule in UIM cases. See, e.g., Lenzi, 140 Wn.2d 267; Fisher, 136 Wn.2d 240; Finney, 21 Wn. App. 601. Thus, because PURE had notice and opportunity to intervene in Andrews's litigation against Fox, it is bound by and cannot relitigate their covenant judgment that has been judged reasonable by a court. See, e.g., T & G, 165 Wn.2d at 267.

C.  Scope of Preclusive Effect

PURE also argues that, aside from its "distinct role" as a UIM insurer, "the presumptive measure of damages for bad faith cannot apply here because the issue at hand pertains to coverage and benefits, not bad faith." But T & G expressly addressed this issue and held to the contrary: when a covenant judgment has been "judged reasonable by a judge, then it is appropriate to use the fact of the settlement to establish liability and the amount of the settlement as

---

[13] PURE's reply brief suggests this court should follow a Wyoming Supreme Court decision, Eklund v. Farmers Ins. Exch., 2004 WY 24, 86 P.3d 259, "and hold that a covenant judgment and reasonableness determination are not preclusive against a UIM insurer." We do not consider arguments raised for the first time in a reply brief. See RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Moreover, while our Supreme Court has found persuasive the law of some other states with UIM statutes similar to ours, PURE does not provide authority stating that Washington courts find Wyoming UIM law persuasive. See, e.g., Hamilton, 107 Wn.2d at 729 ("it is appropriate to look to Louisiana law" to interpret Washington's UIM statute); Finney, 92 Wn.2d at 753 (Florida UIM statute is "virtually identical" to RCW 48.22.030).

the presumptive damage award for purposes of coverage." 165 Wn.2d at 267. While the court "hasten[ed] to add that the presumptive damages are not necessarily the covered damages," and the insurer could litigate such questions in a coverage case, it held "an insurer is not entitled to litigate factual questions that were resolved in the liability case by judgment or arm's length settlement." Id. at 267-68.[14] "What the [tortfeasor] is legally obligated to pay is the exact issue to be determined in the liability suit." Id. at 263. "[T]he rule binds the insurer for purposes of its contractual coverage obligation up to the policy limit *regardless of the existence or not of bad faith* in the insurer's failure to participate." Hawkins, 558 P.3d at 167 (emphasis added).

*In addition* to establishing what the tortfeasor is legally obligated to pay*,* "a good faith settlement establishes the insured's presumptive damages when the insurer, in bad faith, declines to participate in the liability suit." Id. at 266 (citing Besel, 146 Wn.2d at 738); see also Hawkins, 558 P.3d at 168 (settlement amount that a court deems reasonable "becomes the presumptive measure of that component of damages in a later bad faith action against the insurer"). This is so because the insurer's liability is broader when it has acted in bad faith. Id. at 167 n.13. PURE's suggestion that the settlement is a presumptive measure *only* of bad faith damages is unavailing.

---

[14] The court rejected MOE's arguments that unlike "normal liability defenses that belonged to its insured in the underlying action," the particular defense of statute of limitations was different, reasoning that "there is nothing special about the statute of limitations defense when, as here, it largely turns on disputed facts. It is just an affirmative defense like any other affirmative defense." T & G, 165 Wn.2d at 265.

D. PURE's contractual obligation to pay damages to which Andrews is "legally entitled to recover"

PURE argues that, "intervention aside," it did not consent to Andrews's covenant settlement with Fox, and that settlement is not a "contested judgment," so, under the terms of its policy, it cannot be bound by the settlement. This argument fails as well.

The relationship between a UIM insurer and its insured is contractual, but the obligation to offer UIM coverage is statutory. McIllwain v. State Farm Mut. Auto. Ins. Co., 133 Wn. App. 439, 445, 136 P.3d 135 (2006). "Consequently, in Washington, we consider contract principles, public policy, and legislative intent when deciding UIM cases." Id. at 446.

RCW 48.22.030(1) provides "two conditions to underinsured motorist coverage: (1) the "covered person" must be legally entitled to recover damages; and (2) damages must exceed the limits of liability under all other applicable insurance policies." Hamilton, 107 Wn.2d at 726-27. In keeping with the statute, Andrews's UIM policy requires PURE to "pay compensatory damages which an 'insured' is legally entitled to recover." "Damages" is a defined term:

> Damages means the monetary amount that the insured is legally entitled to recover from an uninsured or underinsured negligent person in order to resolve a claim or suit. The amount of damages is determined either by final judgment or settlement with our written consent.

The policy language as to how the amount of damages is determined is stated in the disjunctive—final judgment or written consent.[15] Here, the court

---

[15] Our resolution of this issue obviates the need to address the parties' additional arguments as to the contractual requirement of PURE's written consent to a settlement determining the amount of damages.

entered a final judgment after determining the covenant judgment was reasonable. Bird v. Best Plumbing Group, LLC "explicitly approve[d] the application of RCW 4.22.060 to reasonableness hearings involving covenant judgments." 175 Wn.2d 756, 767, 287 P.3d 551 (2012). And T & G held that "it is appropriate to use the fact of the settlement to establish liability and the amount of the settlement as the presumptive damage award for purposes of coverage." 165 Wn.2d at 267. Therefore, the covenant judgment here establishes the amount Andrews was "legally entitled to recover" for purposes of the UIM statute's requirement as well as "damages" as defined in PURE's policy.[16]

 To summarize, under the Finney-Fisher rule, a UIM insurer who has notice and an opportunity to intervene may be bound to a covenant settlement determined reasonable by a trial court. The insurer is bound whether or not the insurer intervenes or participates in the settlement negotiations. Therefore, we conclude that here, the court's entry of judgment after the reasonableness hearing established the presumptive damages that Andrews is "legally entitled to recover" and that PURE is contractually obligated to pay.

---

[16] PURE also argues that "a reasonableness determination does not adjudicate the true value of the UIM insured's injuries" so the determination "is not preclusive." Throughout its briefing, PURE repeatedly employs the phrases "final adjudication" and "true value." Neither phrase means more than "legally entitled to recover" in RCW 48.22.030(1) or (2). See Dejbod, 63 Wn. App. at 286 ("The overriding principle is the same as before: A liability policy is applicable to the extent that the claimant, if he or she diligently pursued the claim to final adjudication, could legally require the liability insurer to pay."); Groves, 50 Wn. App. at 136 n.3 ("In order to avoid confusion, we will use the word 'damages' throughout to refer to the amount which a person is 'legally entitled to recover.' RCW 48.22.030(1). That is, it refers to the true value of that person's injuries.").

Finally, PURE argues it cannot be bound because a reasonableness hearing "involves no cause of action at all." But our Supreme Court has "explicitly approve[d] the application of RCW 4.22.060 to reasonableness hearings involving covenant judgments." Bird, 175 Wn.2d at 767. In this case, the covenant judgment was in settlement of Andrews's claims asserted against Fox in the lawsuit. PURE's argument is unavailing.

Accordingly, we answer the certified question as follows: PURE, the plaintiffs' UIM insurer, had notice of and the opportunity to intervene in the liability lawsuit and, therefore, is bound by the amount the court judged to be reasonable after a RCW 4.22.060 hearing on the covenant judgment settlement between Andrews and Fox. PURE is not entitled to re-litigate, and therefore not entitled to a jury trial on, the amount of damages that the plaintiffs are legally entitled to recover and that the tortfeasor is legally obligated to pay.

II.      PURE's Subsequent Motion to Dismiss

After oral argument before this court, PURE moved to dismiss its appeal under RAP 18.2 based on the following colloquy with Andrews's counsel during oral argument:

> Q:      So if PURE does what you asked them to do and pays the judgment amount, does PURE then succeed to the rights against Fox?
>
> A:      I think it would – I think it would, but there's more –
>
> Q:      And under Hamilton, they'd have to come back and ask, are you made whole? Except that they don't because you've agreed to a judgment fixing your loss and you're bound by that too?
>
> A:      That's true. That's true.[17]

PURE states that "in reliance on counsel's representation to this Court," on October 10, 2024, it tendered to Andrews $3,455,286.51, which it represented was the amount of the original covenant judgment plus the interest specified in

---

[17] Wash. Ct. App. oral argument, Andrews v. Freeway Motors, Inc., No. 84795-3-I (July 17, 2024), at 11:06-11:32, video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024071123/eventID=2024071123.

the judgment. PURE argues that as a result, the appeal is moot because "the Andrews have been paid an amount that they have agreed makes them whole."

Andrews filed a response opposing the motion to dismiss. Andrews notes that during the proceedings below, on July 18, 2022, PURE refused their offer to let PURE buy out their claims against Fox pursuant to Hamilton, 107 Wn.2d 721, and that they have not accepted PURE's "untimely and inadequate" October 2024 tender. Andrews argues that the appeal is not moot because the court can still provide effective relief, as the conditional tender does not compensate the Andrews for attorney fees and costs, nor for damages on their bad faith claims. They also point to the public interest in resolving the issue on which PURE sought review, and also assert that "PURE's refusal to promptly pay what its insureds are due raises a matter of public interest."

RAP 18.2 provides in relevant part, "The appellate court may, in its discretion, dismiss review of a case on the motion of a party who has filed a notice of appeal, a notice for discretionary review, or a motion for discretionary review by the Supreme Court." PURE rejects the Andrews's assertion that it has "abandoned its legal position"; instead, PURE states it "expressly did not waive its position that it should not be bound." If we take PURE at its word, the certified issue—whether PURE is bound by Andrew-Fox covenant judgment judged to be reasonable—is not moot. Moreover, there is no indication that the parties have reached an agreement to dismiss this appeal. Finding no basis to grant PURE's unilateral motion to dismiss, we decline to exercise our discretion to do so.

III.    Fees

Andrews requests attorney fees on appeal, citing Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wn.2d 37, 52, 811 P.2d 673 (1991). PURE argues their request should be denied because they "are not the prevailing parties."

Under RAP 18.1, a party must request attorney fees if applicable law grants a right to recover fees on review. Under Olympic Steamship, an insured is entitled to an award of attorney fees in any legal action where the insurer compels the insured to assume the burden of legal action or to obtain the full benefit of their insurance contract, regardless of whether the insurer's duty to defend is at issue. 117 Wn.2d at 53. "[A]n insured is entitled to attorney fees if the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim." Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 147, 930 P.2d 288 (1997). "Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which 'the extent of the benefit provided by an insurance contract' is at issue." Id. (quoting McGreevy v. Oregon Mut. Ins. Co., 128 Wn.2d 26, 33, 904 P.2d 731 (1995)). Here, we award Andrews fees as the Respondent on discretionary review because PURE disputes how damages are to be determined, that is, the "extent of the benefit provided," not merely the amount of damages.

Affirmed and remanded.

Chung, J.

WE CONCUR:

Birk, J.

Mann, J.